IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL KRAVICH and NANCY KRAVICH, )
)
        Plaintiffs, ) 2:09-cv-01061-GEB-KJM
)
    v. )
) ORDER GRANTING DEFENDANTS'
WELLS FARGO HOME MORTGAGE, WELLS ) MOTIONS TO DISMISS
FARGO BANK, N.A., SOUTHSTAR ) PLAINTIFFS' COMPLAINT[*]
FUNDING, LLC, FIRST AMERICAN )
LOANSTAR TRUSTEE SERVICES, )
LAWRENCE ORDONIO, )
)
        Defendants. )
_____)

        On July 14, 2009, Defendant First American Loanstar Trustee Services ("Loanstar") filed a motion to dismiss Plaintiffs' First Amended Complaint ("FAC") for failure state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and for failure to allege the fraud claims with particularity under Federal Rule of Civil Procedure 9(b).[1] (Docket No. 14.) On July 27, 2009, Defendant Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. ("Wells Fargo") also filed a motion to dismiss Plaintiffs' FAC under Rules 12(b)(6) and 9(b). (Docket No. 23.) Alternatively, Wells Fargo moves under Federal Rule of Civil Procedure 12(f) for an order striking certain allegations in the FAC.

---

[*] This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

[1] Part of Loanstar's motion sought dismissal under the litigation privilege in California Civil Code section 47(b). However, when Plaintiff rejoined that the correct privilege section was the common-interest privilege under section 47(c), Loanstar agreed in its reply brief. Since Loanstar did not notice that section in its motion, the issue is disregarded.

## I. **Plaintiffs' Factual Allegations in Their First Amended Complaint**

In June 2006, Plaintiffs Michael and Nancy Kravich sought to purchase the residential property located at 415 Verbena Court in Roseville, California. (FAC ¶ 7.) Plaintiffs met with Wells Fargo loan officer Lawrence Ordonio, who informed Plaintiffs he could get them the "best deal" and the "best interest rates" available on the market. (FAC ¶ 23.) Plaintiffs requested a single 30-year loan with a fixed interest rate. (FAC ¶ 25.) "Just prior to closing," Plaintiffs agreed to a loan package including a "first mortgage" to cover 80% of the home and a "second mortgage" to cover 20% of the home. (Id.) Ordonio informed Plaintiffs that the first mortgage would be a fixed rate loan for two years and would then adjust downward and Plaintiffs' monthly payments would decrease. (Id.) Ordonio assured Plaintiffs that if payments ever became unaffordable, Wells Fargo would refinance both loans. (FAC ¶ 27.)

Plaintiffs were not given a copy of the loan documents prior to closing as required, and at the time of closing, Plaintiffs were rushed to sign the documents. (FAC ¶ 28.) The loan documents were never explained to Plaintiffs, Plaintiffs were never given an opportunity to review them, and Plaintiffs never received the required copies of the notice of cancellation. (FAC ¶¶ 28-29.)

On or about July 21, 2006, Plaintiffs completed the loan transaction. (FAC ¶ 30.) The terms of the loans were included in two promissory notes, each secured by a deed of trust on the property. (Id.) The first deed of trust identified Fidelity National Title Insurance Company as the trustee and Wells Fargo as the lender. (Id.) The second deed of trust identified Kirk Smith as the trustee and Southstar Funding LLC as the lender. (Id.) The deeds of trust also

identified Mortgage Electronic Registration Systems, Inc. as the named nominee and beneficiary. (FAC ¶ 31.)

In August 2008, the interest rates on Plaintiffs' loans adjusted upward and the monthly payments increased substantially. (FAC ¶ 32.) Plaintiffs contacted Wells Fargo and were told they were not eligible to refinance their mortgage. (Id.) Plaintiffs then contacted Tony Manos, an independent loan modification agent, to discuss negotiating a loan modification. (FAC ¶ 33.) Manos contacted Wells Fargo and was told that because Plaintiffs were current on their loan, they were not eligible for a loan modification. (Id.) Subsequently, Plaintiffs failed to make four consecutive loan payments, and began negotiating a loan modification with Wells Fargo. (FAC ¶ 34.) Wells Fargo offered to modify Plaintiffs' loan by adding $25,000 principle onto the loan, and fixing the interest rates at 5.5% on the first loan and 9.5% on the second loan. (FAC ¶ 35.) On November 12, 2008, Loanstar filed a Notice of Default. (FAC ¶ 34.) In the Notice of Default Loanstar "claimed that it was the duly appointed trustee pursuant to the deed of trust." (FAC ¶ 23.) Plaintiffs agreed to the principle increase and fixed rates proposed by Wells Fargo to prevent foreclosure. (FAC ¶ 36.)

Plaintiffs sent a Qualified Written Request ("QWR") to Wells Fargo pursuant to the Real Estate Settlement Procedures Act ("RESPA") on March 31, 2009, in which Plaintiffs demanded rescission of both loans under the provisions of the Truth in Lending Act ("TILA"). (FAC ¶ 37.)

Plaintiffs allege the following claims: (1) violation of TILA, 15 U.S.C. §§ 1601 et seq.; (2) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); (3) negligence;

(4) violation of RESPA, 12 U.S.C. §§ 2601, *et seq.*; (5) breach of fiduciary duty; (6) fraud; (7) violation of California Business and Professions Code § 17200; (8) breach of contract; (9) breach of the implied covenant good faith and fair dealing; and (10) wrongful foreclosure. For the following reasons, Defendants' motions to dismiss are GRANTED.

## II. Legal Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). To avoid dismissal, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). When considering a dismissal motion, all "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). However, this "tenet . . . is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. ---, 129 S.Ct. 1937, 1940 (2009).

## III. Analysis

**B. Truth in Lending Act**

   **1. Damages**

Wells Fargo seeks dismissal of the civil damages portion of Plaintiffs' TILA claim, arguing it is time barred. (Wells Fargo Mot. to Dismiss ("Mot.") 4:10-12.) TILA prescribes that any action for damages may be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "[A]s a general rule the limitations period starts at the consummation of the transaction." King v. California, 784 F.2d 910, 915 (9th Cir.1986)).

Plaintiffs allege the TILA violations occurred on July 21, 2006, the date Plaintiffs entered into the loan agreement with Defendants and consumed the loan transaction. Since Plaintiffs did not bring their TILA damages claim until April 17, 2009, which is more than one year after July 21, 2006, this claim was brought after the one-year statute of limitations period.

Plaintiffs argue this limitations period is equitably tolled since "the facts surrounding the loan transaction were purposefully hidden and continue to be hidden from them to this day." (Plt.'s Opp'n to Mot. ("Opp'n") 5:15-23.) The Ninth Circuit has held "that equitable tolling [of TILA civil damages claims] may, in appropriate circumstances, suspend the limitations period until the borrower discovers or has reasonable opportunity to discover the fraud or non-disclosures that form the basis of the TILA action." King, 784 F.2d at 915. Plaintiffs have not alleged facts explaining why they did not discover the fraud or non-disclosures that form the basis of the TILA action within the limitations period. Since Plaintiffs' allegations do not allege facts showing this claim is equitably tolled, this claim is dismissed because it is barred by TILA's one year statute of limitations.

### 2. Rescission

Wells Fargo also seeks dismissal of Plaintiffs' TILA rescission claim, arguing "TILA does not afford borrowers a right to rescind a residential mortgage transaction." (Mot. 4:15-16.) Plaintiffs allege in the FAC "Defendants [are liable] for . . . unlawful conduct concerning a residential mortgage loan transaction with Plaintiffs." (FAC ¶ 6.)

> [T]he rescission provision of TILA contains a specific exemption for a 'residential mortgage transaction,' which is defined in the statute as: 'a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's [d]welling to finance the acquisition or initial construction of such dwelling.' 15 U.S.C. § 1602(w). Under TILA, a residential mortgage transaction includes the initial construction financing of the principal dwelling, as well as a permanent loan to satisfy the construction financing. See 12 C.F.R. 226, Supp. I 2(a)(24)(4)(1998). Moreover, the exemption applies whether it is the same lender providing the permanent financing or an entirely different lender. Id. In addition, as long as proceeds from the loan are used to acquire the home, the residential mortgage transaction exemption applies, even if some proceeds are used for other purposes.

Zakarian v. Option One Mortg. Corp., 642 F. Supp. 2d 1206, 1214-15 (D. Hawaii 2009); see also Yazdanpanah v. Sacramento Valley Mortg. Group, 2009 WL 4573381, *6 (N.D. Cal. 2009) (stating no statutory right of rescission exists "where the loan at issue involves the creation of a first lien to finance the acquisition of a dwelling in which the customer resides or expects to reside."). Since Plaintiffs seek rescission of their residential mortgage transaction, which is specifically exempted from TILA, and Plaintiffs' argument in their opposition to the motion did not address this exemption, Wells Fargo's motion to dismiss this claim is GRANTED.

**C. Rosenthal Fair Debt Collection Practices Act**

Wells Fargo and Loanstar each seek dismissal of Plaintiffs' second claim alleged under the RFDCPA, arguing Plaintiffs "allege[] mere conclusions." (Mot. 13:20-21; Loanstar Motion to Dismiss ("Loanstar Mot.") 10:9-11.)

> The purpose of the RFDCPA is 'to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer

6

>           debts and to require debtors to act fairly in
>           entering into and honoring such debts.' Cal.
>           Civ.Code § 1788.1(b). Under the RFDCPA, a "debt
>           collector" is defined as 'any person who, in the
>           ordinary course of business, regularly, on behalf
>           of himself or herself or others, engages in debt
>           collection.' (Cal.Civ.Code. § 1788.2(c)). A debt
>           collector violates the act when it engages in
>           harassment, threats, the use of profane language,
>           false simulation of the judicial process, or when
>           it cloaks its true nature as a licensed collection
>           agency in an effort to collect a debt.

Keen v. American Home Mortg. Servicing, Inc., --- F. Supp. 2d ----, 2009 WL 3380454, *4 (E.D. Cal. 2009).

Plaintiffs allege "Defendants are debt collectors" and their "actions constitute a violation of the [RFDCPA] in that they threatened to take actions not permitted by law, including but not limited to . . .: collecting on a debt not owed to [them], making false reports to credit reporting agencies, falsely stating the amount of a debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair or unconscionable means in an attempt to collect a debt." (FAC ¶ 66.)

Plaintiffs' allegations, however, "are too vague to give rise to any inference that a specific defendant has violated" the RFDCPA. Arikat v. JP Morgan Chase & Co., 430 F. Supp. 2d 1013, 1027 (N.D. Cal. 2006) (dismissing as too vague, RFDCPA claim that alleged all violations against all defendants without specifying each defendant's individual conduct). Plaintiffs do not allege which Defendants are debt collectors, to whom they reported the debt, and whether this information was accurate. This claim is also deficient since it fails to allege which section of the RFDCPA Defendants violated. See Blanco v. Am. Home Mortg. Servicing, Inc., 2009 WL 4674904, *4 (E.D. Cal. 2009) (dismissing claim under the RFDCPA, in

part, for failing to identify the provisions of the statute allegedly violated). Therefore, each Defendant's motion to dismiss Plaintiffs' second claim for violation of the RFDCPA is GRANTED.

**D. Negligence**

Wells Fargo seeks dismissal of Plaintiffs' third claim for negligence, arguing since it was the lender it did not owe Plaintiffs a duty of care. (Mot. 6:10.) Plaintiffs rejoin, "A general duty not to harm another is owed to everyone." (Opp'n 16:7.)

"Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, except[] those imposed due to special circumstances." Resolution Trust Corp. v. BVS Dev., 42 F.3d 1206, 1214 (9th Cir. 1994). Special circumstances arise when a "lender actively participates in the financed enterprise beyond the domain of the usual money lender." Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980) (quotations omitted). "Absent the existence of duty . . ., there can be no breach and no negligence." Nichols v. Keller, 15 Cal. App. 4th 1672, 1683 (1993).

Plaintiffs do not allege that Wells Fargo actively participated in the mortgage transaction beyond the usual practices associated with the lending business. Therefore, Plaintiffs have failed to allege Wells Fargo owed Plaintiffs a duty of care, and Wells Fargo's motion to dismiss Plaintiffs' negligence claim is GRANTED.

Loanstar also seeks dismissal of Plaintiffs' third claim for negligence, arguing Plaintiffs have not alleged facts establishing the required elements of "causation" and "damages," and have not "spefic[ied] any duty or breach of duty of Loanstar" which could give rise to a negligence claim. (Loanstar Mot. 11:4, 9, 19.) In their

8

FAC, Plaintiffs allege Loanstar "breached [its] duty by [its] failure to perform acts in such a manner as to not cause Plaintiffs harm. Plaintiffs are informed and believe and thereupon allege that defendants failed to maintain the original mortgage note, failed to properly create original documents, and failed to make the required disclosures . . . ." (FAC ¶ 72.) However, Plaintiffs have not alleged any facts showing that Loanstar violated a duty by committing these alleged failures in its capacity as a Substitution trustee that was not present at the consummation of the loan. Plaintiffs' conclusory allegations are insufficient to state a cognizable legal duty owed and breached by Loanstar. Accordingly, Loanstar's motion to dismiss Plaintiffs' third claim is GRANTED.

**E. Real Estate Settlement Procedures Act**

Wells Fargo also seeks dismissal of Plaintiffs' fourth claim alleged under RESPA, arguing it is premature, since Plaintiffs filed their initial complaint before Wells Fargo was required to respond to Plaintiffs' QWR. (Mot. 5:17-18.) Under RESPA, upon receipt of a QWR, a loan servicer has twenty days to acknowledge receipt of the QWR and sixty days to respond to the QWR. 12 U.S.C. § 2605(e)(1)(A), (e)(2). Plaintiffs allege, "On March 31, 2009, a [QWR] under RESPA was mailed to Defendant, Wells Fargo [] which included a demand to rescind both loans under the provisions of TILA." (FAC ¶ 37.) Plaintiffs filed their initial complaint on April 17, 2009, seventeen days after they mailed the March 31, 2009 letter. Since this lawsuit was filed before either the twenty or sixty day window had elapsed, Plaintiffs did not have a viable RESPA claim when the lawsuit was filed. See Lincoln v. GMAC Mortg., LLC, 2009 WL 5184413, *2 (C.D. Cal. 2009) (finding RESPA claim premature and granting motion to dismiss since plaintiff filed

9

complaint before the sixty day "window" had elapsed). Therefore, Wells Fargo's motion to dismiss Plaintiffs' RESPA claim is GRANTED.

**F. Breach of Fiduciary Duty**

Wells Fargo also seeks dismissal of Plaintiffs' fifth claim for breach of fiduciary duty, arguing it owed Plaintiffs no fiduciary duty in connection with the loan transaction. (Mot. 6:5-9.) Plaintiffs counter Wells Fargo "engaged in a civil conspiracy," when it approved a "predatory loan" based on "overstated income . . . simply to make a substantial profit for itself." (Opp'n 16:1-5.)

"To state a claim for breach of fiduciary duty, 'a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages.'" Serrano v. Sec. Nat'l Mortg. Co., 2009 WL 2524528, *5 (S.D. Cal. 2009) (citing Shopoff v. Cavallo LLP v. Hyon, 167 Cal. App. 4th 1489 (Cal. Ct. App. 2008)). "Absent 'special circumstances' a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." Rangel v. DHI Mortg. Co., Ltd., 2009 WL 2190210, *3 (E.D. Cal. 2009) (quotations omitted).

> The relationship between a lending institution and its borrower-client is not fiduciary in nature. A commercial lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary[,] which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another.

Nymark v. Heart Fed. Saving & Loan Ass'n, 231 Cal. App. 3d 1089, 1093 n.1 (1991) (citations omitted). Plaintiffs allege Wells Fargo is a lender, but do not allege facts sufficient to show special circumstances existed creating a fiduciary relationship between the Plaintiffs and Wells Fargo. Therefore, Wells Fargo's motion to

dismiss Plaintiffs' fifth claim for breach of fiduciary duty is GRANTED.

**G.  Fraud**

Wells Fargo and Loanstar each seek dismissal of Plaintiffs' sixth claim for fraud, arguing that it fails to satisfy Rule 9(b)'s heightened pleading requirements. (Mot. 14:12; Loanstar Mot. 11:23-24.)  This standard required Plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Plaintiffs do not allege what statements were false and which Defendants made the false statements.  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (quotations omitted).  Therefore, Plaintiffs' sixth claim is insufficient to state a claim for fraud, and each Defendant's motion to dismiss this claim is GRANTED.

**H.  Breach of Contract**

Wells Fargo also seeks dismissal of Plaintiffs' eighth claim for breach of contract, arguing the "alleged oral promises are not enforceable," and "[a] loan agreement is not valid unless it is in writing and signed by the party to be charged."  (Mot. 12:6-7.) Plaintiffs rejoin they "alleged they were promised an affordable fixed rate 30-year loan."  (Opp'n 17:15-21.)  Plaintiffs allege this promise was made before the loan closed, but do not allege these terms were part of the Note itself.

//

"Unless an agreement to restructure a loan embodies definite terms, capable of enforcement, it is not a legally valid contract." Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 483 (1989). "Preliminary negotiations or an agreement for future negotiations are not the functional equivalent of a valid subsisting agreement." Id.

Here, Plaintiffs allege Wells Fargo promised to refinance Plaintiffs' loan at a lower rate after two years or when the loan became unaffordable. (FAC ¶¶ 25, 27.) Plaintiffs allege Wells Fargo breached this promise by failing to refinance the loan. However, Plaintiffs' allegations show these statements were made during "preliminary negotiations," and do not show they were "the functional equivalent of a valid subsisting agreement." Price, 213 Cal. App. 3d at 483. Since Plaintiffs have failed to allege the existence of a valid, enforceable contract, Wells Fargo's motion to dismiss Plaintiffs' eighth claim is GRANTED.

**I. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Wells Fargo and Loanstar each seek dismissal of Plaintiffs' ninth claim for breach of the implied covenant of good faith and fair dealing, arguing Plaintiffs' allegations "are incoherent and/or uncertain" and "Plaintiffs fail to allege the existence of any contract." (Mot. 11:8; Loanstar Mot. 15:9-11.) Plaintiffs argue their breach of covenant claim is a "derivative of Plaintiffs' Breach of Contract Cause of Action." (Opp'n 14:18-19.) However, since Plaintiffs have failed to state a claim for breach of contract, they have failed to state a claim for breach of the implied covenant of good faith and fair dealing. Therefore, each Defendant's motion to dismiss Plaintiffs' ninth claim is GRANTED.

//

**J. Wrongful Foreclosure**

Wells Fargo and Loanstar each seek dismissal of Plaintiffs' tenth claim for wrongful foreclosure, arguing no claim exists since there was no foreclosure sale of Plaintiffs' residence. (Mot. 7:13-17; Loanstar Mot. 9:9-11.) "Assuming without deciding that a claim for wrongful foreclosure may be brought when foreclosure has not yet occurred, Plaintiff[s] ha[ve] failed to allege a violation of any of the requirements for a non-judicial foreclosure." Gonzalez v. First Franklin Loan Svs., 2010 WL 144862, *18 (E.D. Cal. 2010). "A trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage deed or trust." Id. (quoting Munger v. Moore, 11 Cal. App. 3d 1, 7 (1970)). Here, Plaintiffs have failed to allege facts showing that Defendants engaged in illegal or fraudulent activity related to "foreclosure" of the property.

Plaintiffs also allege Defendants were not in possession of the Promissory Note, therefore, they were not entitled to institute a foreclosure under the deed of trust. However, possession of the Promissory Note is not required to institute a non-judicial foreclosure. See Champlaie v. BAC Home Loans Servicing, LP, 2009 WL 3429622, at * 13-14 (E.D. Cal. 2009) (compiling cases and concluding "that neither possession of the promissory note nor identification of the party in possession is a prerequisite to non-judicial foreclosure).

Plaintiffs also allege Defendants "failed to properly record and give notice of the Notice of Default." (FAC 127.) Loanstar has attached the Notice of Default to its motion to dismiss, arguing it is

the Notice of Default referenced in Plaintiffs' FAC, and requesting that the Court take judicial notice of it. This document is considered under the "incorporation by reference doctrine [which] permits courts to takes into account documents" not attached to the complaint in "situations [such as this] in which the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of the document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The Notice of Default was recorded on November 12, 2008. (Loanstar's Request for Judicial Notice Ex. D.). Plaintiffs do not allege facts showing how the recording was improper or how Defendants failed to give notice of the default.

Finally, Plaintiffs allege under their wrongful foreclosure claim that Wells Fargo has violated the federal Emergency Economic Stabilization Act of 2008 ("EESA") and the federal Troubled Asset Relief Program ("TARP") by failing to suspend the foreclosure action to allow Plaintiffs to be considered for alternative foreclosure prevention options. (FAC ¶¶ 129-131.) However, Plaintiffs have not alleged under which provisions of these Acts they are suing or that either Act creates a private cause of action. See Gonzalez, 2010 WL 144862, *18 (finding that TARP and EESA do not provide private causes of action).

Therefore, each Defendant's motion to dismiss Plaintiffs' tenth claim is GRANTED.

**K. California Business and Professions Code**

Finally, Wells Fargo and Loanstar each seek dismissal of

14

Plaintiffs' seventh claim, in which Plaintiffs allege Defendants violated California Business and Professions Code section 17200 by participating in unfair and fraudulent business practices, arguing Plaintiffs "have not alleged sufficient facts to support" this claim. (Mot. 15:16; Loanstar Mot. 14:13-15.)  Plaintiffs allege in a conclusory fashion, "Defendants committed unlawful, unfair, and/or fraudulent business practices, as defined by California Business and Professions Code 17200."  (FAC ¶ 103.)

"A plaintiff alleging unfair business practices under th[is] statute[] must state with reasonable particularity the facts supporting the [] elements of the violation." Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (1993).  Here, Plaintiffs identify no specific practices of Wells Fargo or Loanstar that they find to be unlawful, unfair, or fraudulent.  Plaintiffs conclusory allegations are insufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Therefore, each Defendant's motion to dismiss Plaintiffs' seventh claim is GRANTED.

## IV. Conclusion

For the stated reasons, each Defendant's motion to dismiss is GRANTED.  Wells Fargo's motion to strike is denied as moot. Further, Plaintiffs are granted fourteen (14) days from the date on which this Order is filed to file a second amended complaint in accordance with this Order.

Dated: February 10, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge